IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ADMINISTRATRIX OF THE ESTATE OF JOHN DOE, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:08-cv-823 |
| vs. | ) ) | HON. DONETTA W. AMBROSE |
| FAYETTE COUNTY CHILDREN AND YOUTH SERVICES; DAVID L. MADISON, Fayette County Children and Youth Services Administrator; RENEE COLL, Fayette County Children and Youth Services Caseworker; and KIM SCHUESSLER, Fayette County Children and Youth Services Caseworker, | ) ) ) ) ) ) ) ) ) | *Electronically Filed* |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES**

**INTRODUCTION**

Defendants object to the amount of attorney's fees requested by plaintiff, claiming that the hourly rates requested by plaintiff's attorneys are too high, the hours plaintiff's attorneys expended on the litigation in this case are duplicative or excessive, and that plaintiff did not achieve complete success.  But defendants fail to back up their objections with citations to case law or even state the specific grounds upon which they base those objections.  Plaintiff has provided ample evidence supporting her attorneys' hourly rates, number of hours expended, and the excellent results she attained in this case.  First, plaintiff has submitted, as exhibits to this memorandum, declarations from four respected attorneys who have practiced in Pittsburgh for decades that support the

reasonableness of the hourly rates requested by her attorneys.  Plaintiff has also included citations to cases more recent than those cited by the defendants in which this Court awarded hourly rates similar to those of plaintiff's attorneys.  Second, plaintiff has provided detailed time sheets that demonstrate that the number of hours her attorneys expended on this litigation was reasonable. Defendants' objections to those hours borders on the frivolous, as defendants fail to state with any specificity their grounds for contending that the hours are unreasonable.  Finally, defendants' contention that plaintiff did not achieve complete success in this case because the jury only awarded damages against Fayette County Children and Youth Services and not the FCCYS employees who were named as defendants is contradicted by the outcome of this litigation: An enforceable order reinstating John Doe's full parental rights in his children; a summary judgment ruling that the policy responsible for John Doe's damages was an unconstitutional infringement on parents' First and Fourteenth Amendments rights to associate with and care for their children; and a jury verdict in plaintiff's favor of $105,000.  That is truly an excellent result.  Accordingly, no reduction of the lodestar is warranted, and plaintiff is entitled to a fully compensatory fee.

I.      **The Requested Hourly Rates of Plaintiff's Attorneys Are Reasonable Based on Declarations of Pittsburgh Attorneys and Past Fee Awards of This Court.**

Although Defendants object to the rates requested by plaintiff's attorneys, contending that plaintiff did not provide "any evidence of any civil-rights attorney charging his clients" the rates requested by plaintiff's attorneys or any evidence of any judge in this district awarding the rates requested by plaintiff's attorneys, plaintiff explicitly requested in her Petition that she be permitted to submit such evidence in the event that defendants objected to her attorneys' requested rates in

order to avoid incurring unnecessary fees.[1]  As an initial matter, defendants' suggestion that the rates requested by plaintiff's attorneys must be compared to rates that Pittsburgh civil-rights attorneys charge their clients is wrong.  As plaintiff explained in her Petition for Attorneys' Fees, Congress intended in passing the fee-shifting provisions in 42 U.S.C. § 1988 that civil-rights lawyers should be compensated at the same market rate as lawyers handling other types of "complex Federal litigation":

> It is intended that the amount of fees awarded ... be governed by the same standards which prevail in other types of equally complex Federal litigation, such as anti-trust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature.[2]

Accordingly, the hourly rates requested by plaintiff's attorneys should be compared to the rates charged by Pittsburgh attorneys of similar experience, skill, and reputation for complex federal litigation, regardless of the nature of the case.

A. **The Rates Requested by Plaintiff's Attorneys Are Supported by Declarations from Experienced Pittsburgh Attorneys.**

Plaintiff has attached declarations from four respected Pittsburgh attorneys, former U.S. District Judge Robert Cindrich, Tim O'Brien, Michael Malakoff, and Ellen Doyle, supporting her assertion that the rates her attorneys have requested accurately reflect the market price for lawyers in this region of similar experience, skill, and reputation in cases involving complex federal litigation.  *See* Exhibits 1-4.

---

[1]  Plaintiff's Petition for Attorneys' Fees at ¶ 37.

[2]  *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983) (citations omitted); *see Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974) ("An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience.").  Johnson was cited favorably in *Hensley*, 461 U.S. at 430, and in *Public Interest Research Group of N.J. v. Windall*, 51 F.3d 1179, 1185 n.8 (3d Cir. 1995).

The declarations of Judge Cindrich, Mr. O'Brien, Mr. Malakoff, and Ms. Doyle support Mr. Walczak's requested hourly rate of $500. All four attorneys have practiced in this market for decades and are personally familiar with Mr. Walczak's work. Judge Cindrich states that based on his personal experience with Mr. Walczak, as a judge and since 2004 as a lawyer in the Pittsburgh community, "a $500 hourly rate is eminently reasonable and even low for lawyers of comparable skill, achievement and reputation in the Pittsburgh federal-court-civil rights community and in this case, for a nationally known and highly regarded civil rights advocate." Ex. 1 at ¶ 8. According to Judge Cindrich, the fee range for lawyers of comparable experience to Mr. Walczak representing clients in comparably complex matters ranges from a low of $300 per hour to a high of approximately $550 per hour. Ex. 1 at ¶ 9. Judge Cindrich further states that "Mr. Walczak, who is widely recognized as a pre-eminent plaintiffs' civil rights lawyer in this legal market, should command a rate at the top of the fee scale. Consequently, the $500 per-hour rate is eminently reasonable." Ex. 1 at ¶ 9. Judge Cindrich also notes the importance of appropriately compensating attorneys who take civil-rights cases to reflect both the skill required to handle such cases and the societal benefits that flow from them. Ex. 1 at ¶ 11.

Mr. O'Brien states that, based on his "first-hand opportunity to observe Mr. Walczak's legal skills and capabilities it is my opinion that both within the Commonwealth of Pennsylvania and nationally, he is regarded as one of the most competent and capable litigators in the area of constitutional and civil rights litigation." Ex. 2 at ¶ 7. Mr. O'Brien, who bills at $525 per hour, asserts that Mr. Walczak's hourly rate of $500 is "extremely reasonable, and clearly within the prevailing hourly rates for attorneys possessing similar skills, experience, and reputation." Ex. 2 at ¶ 7.

4

Mr. Malakoff, whose rate of $540 per hour was not contested by defendants in a recent fee petition, states that "an hourly rate of $500 is quite reasonable in the Pittsburgh legal community given Attorney Walczak's very narrow, but specific and unique skills, ability, and extremely high reputation at the bar."  Ex. 3 at ¶¶ 10, 17.  Mr. Malakoff asserts that "very few attorneys in Pittsburgh, and only those with the highest level of experience, could have handled the exceptionally complex factual and constitutional issues presented in this case.  Attorney Walczak is one of those very few attorneys in the state of Pennsylvania that in my opinion had the requisite unique trials skills, federal court experience, and knowledge about the United States Constitution who could have tried a case such as this one." Ex. 3 at ¶ 16.

Ms. Doyle states that the hourly rate for senior partners at her law firm is $550 per hour and that based on her knowledge of Mr. Walczak's experience, skill, and reputation, "his requested rate of $500 lies within the range of fees charged for work by lawyers with similar backgrounds and abilities and is reasonable in light of the local market for lawyers of his level of experience in federal civil-rights litigation."  Ex. 4 at ¶¶ 10, 12.

Ms. Doyle's declaration also supports Ms. Rose's requested hourly rate.  Ms. Doyle bases her belief that Ms. Rose's requested hourly rate is reasonable on the fees charged in complex federal litigation, such as class actions and civil-rights cases, by associates with more than four years of experience at her firm, Stember, Feinstein, Doyle & Payne.  Specifically, such associates command hourly rates of $300 to $410 per hour. Ex. 4 at ¶ 10.   The hourly rate of $325 requested by Ms. Rose, who graduated cum laude from the Georgetown University Law Center in 2004 and has practiced federal civil-rights litigation since August 2004, is thus fully in line with the rates charged

by associates with similar educational backgrounds and experience at Ms. Doyle's firm.  Ex. 4 at ¶¶ 13-14.

**B.      The Rates Requested by Plaintiff's Attorneys Are in Line with Previous Fee Awards by This Court.**

The rates requested by Mr. Walczak and Ms. Rose are also supported by previous awards of fees to attorneys of similar experience, skill, and reputation in this jurisdiction.  For instance, in November 2010, this Court awarded the requested hourly rate of $475 to attorney Abbe Fletman of the law firm Flaster/Greenberg in a case on behalf of student athletes who brought a Title IX challenge against their university.[3]  Ms. Fletman graduated cum laude from the University of Pennsylvania in 1988, was head of her firm's litigation section of the Intellectual Property Practice Group, was voted by members of the Pennsylvania Bar as a Pennsylvania Super Lawyer in 2004 and 2006 through 2010, and was a fellow at the Academy of Advocacy of Temple University Beasley School of Law.  *Id.* at *3.  In comparison, Mr. Walczak graduated cum laude from Boston College School of Law in 1986, has practiced constitutional and civil-rights law since 1986, has litigated federal civil-rights cases as an ACLU attorney for twenty years, including seven years in his current position as legal director of the ACLU of Pennsylvania, has received several awards, including the Federal Bar Association's Western Pennsylvania Lawyers of the Year in 2003, and is a Fellow of the American College of Trial Lawyers and a member of the Academy of Trial Lawyers of Allegheny County.  Mr. Walczak's requested rate of $500 — just $25 more than the rate requested by Ms. Fletman — reflects his additional two years of experience and the increase in market rates since Ms. Fletman made her request in April 2010.

---

[3]  *See Choike v. Slippery Rock Univ.*, No. 6-622, 2010 WL 4614610, *4 (W.D. Pa. Nov. 5, 2010).

In the same case, this Court awarded a $325 hourly rate in 2010 to Lizanne Hackett, a 2002 cum laude graduate of Harvard Law School who "practices in both state and federal court and has previously been involved in discrimination cases."[4]   In comparison, Ms. Rose graduated cum laude from the Georgetown University Law Center in 2004 and has practiced constitutional and civil-rights litigation exclusively since that time, primarily in federal court.   In light of the similar years of experience between Ms. Hackett and Ms. Rose, the increase in market rates since Ms. Hackett made her fee request in April 2010, and Ms. Rose's specialization in civil-rights cases like this one, Ms. Rose's requested rate of $325 is reasonable.

In addition to the *Choike* case, a 2008 decision by Judge Gibson supports the hourly rate requested by Ms. Rose.[5]   In *Sowers*, a rate of $375 was awarded to Joel Hurt, an associate at the Pittsburgh law firm Stember, Feinstein, Doyle & Payne in an ERISA class action case.   Mr. Hurt graduated from the University of Pittsburgh School of Law in 2000 and had been practicing law for approximately eight years at the time of the fee award.[6]   In comparison, Ms. Rose has been practicing law for almost seven years and is requesting an hourly rate $50 lower than that awarded by this Court to Mr. Hurt more than two years ago.

Although defendants cite other cases in the Western District in support of their contention that the rates requested by Mr. Walczak and Ms. Rose are unreasonable, those cases are distinguishable.   For instance, defendants contend that Mr. Walczak should not be entitled to more

---

[4]   *Id.*  at *3-4.

[5]   *See Sowers v. Freightcar America, Inc.*, No. 03:07cv201 (W.D. Pa. Nov. 20, 2008) (Amended Order) (attached as Exhibit 5).

[6]   *See* biography of Joel Hurt on website of Stember, Feinstein, Doyle & Payne at http://www.stemberfeinstein.com/cms/attorney-joel-r-hurt.

than $400 per hour because attorney Samuel Cordes was awarded an hourly rate of $400 in 2008. *See* Defendants' Objections to Plaintiff's Petition for Attorneys' Fees at 2-3 ("Defs. Objections") (citing *Lining v. Temporary Personnel Services, Inc.*, No. 07-01724, 2008 WL 2996871, *1 (W.D. Pa. July 31, 2008)).  The fee award in *Linning*, which was decided three years ago, does not reflect the increase in market rates since 2008.[7]  Moreover, Judge Fischer acknowledged in *Linning* that Western District judges had awarded hourly rates of $425 per hour for civil-rights attorneys but said that Mr. Cordes was not entitled to his requested rate of $425 because *Linning* was an employment discrimination case.[8]  Finally, Judge Fischer noted that Mr. Cordes' requested hourly rate had increased 20% in one year.[9]  In contrast, Mr. Walczak's requested hourly rate is just 10% more than the hourly rate he requested in January 2010.

In support of their contention that a reasonable rate for an attorney comparable to Ms. Rose is $175 to $180 per hour, defendants point to a 2007 decision by this Court granting the requested hourly rate of $175 to attorney John E. Black III.  Although defendants contend that Mr. Black "has five more years' experience" than Ms. Rose, at the time of the fee award, he had, at most, one more

---

[7]  The other cases cited by defendants in support of their contention that "the reasonable rate of a skilled attorney in complex civil rights matters is $350-$400 per hour" similarly fail to reflect current market rates as they date from 2008 or 2007 and involve employment cases, which Judge Fischer held were distinguishable from civil-rights cases in *Linning*.  In the most recent case cited by the defendants, *Gerzstein v. Univ. of Pittsburgh Cancer Inst.*, No. 08-1280, 2009 WL 4639335 (W.D. Pa. Dec. 7, 2009), Judge Schwab awarded attorney Colleen Johnston $350, which was the full hourly rate she requested.  *Id.*  Ms. Johnston's practice concentrates exclusively in the area of employment law, and she graduated from law school in 1991, five years after Mr. Walczak.  *See id.*

[8]  2008 WL 2996871, at *5.

[9]  *Id.*

8

year of experience.  Moreover, the fee award in that case, which was made more than four years ago, does not reflect the subsequent increase in market rates.

The hourly rates that defendants assert would be reasonable for Mr. Walczak and Ms. Rose — $350 to $400 and $175 to $180, respectively — are significantly lower than the hourly rates that Chief Judge Lancaster held to be reasonable for Mr. Walczak and Ms. Rose in *Codepink Women for Peace v. U.S. Secret Service*, No. 09-1235, 2010 WL 219262 (W.D. Pa. June 1, 2010).  In that case, the Court held that Mr. Walczak's requested hourly rate of $450 was reasonable against defendants' argument that Mr. Walczak was entitled to only $400 per hour, and the Court awarded Ms. Rose her requested rate of $275 per hour.[10]  Although defendants suggest that the Court considered the compressed nature of the case, which involved filing a motion for a temporary restraining order and presenting evidence at a hearing in a short amount of time, in its determination that Mr. Walczak's and Ms. Rose's rates were reasonable, there is no evidence that the compressed nature of the case played a part in the Court's finding regarding the attorneys' reasonable hourly rates.  Rather, the compressed nature of the case factored into the Court's decision to apply a "relatively low" negative multiplier to the lodestar to reflect the plaintiffs' limited success.[11]  That approach was consistent with the Third Circuit's approach to calculating attorney's fees, which requires the Court to first determine the lodestar by multiplying the number of hours reasonably expended on the litigation by

---

[10]  *Id.* at *4.  Defendants did not contest Ms. Rose's requested hourly rate of $275 based on the recommendation of an auditor they hired who concluded that Ms. Rose's requested rate was reasonable.

[11]  *Id.* at *4-5.

9

a reasonable hourly rate.[12]  Only after determining the lodestar may the court "adjust the fee for a variety of reasons," including the "results obtained."[13]   Accordingly, Chief Judge Lancaster's determination that reasonably hourly rates for Mr. Walczak and Ms. Rose were $450 and $275, respectively, should be a starting point for determining the attorneys' reasonable hourly rates in this case.

Defendants further contend that it is unreasonable for Mr. Walczak and Ms. Rose to request a higher rate than they were awarded in *Codepink* for any work on this case that predates *Codepink* because that would constitute a retroactive rate increase.  But the Third Circuit has directed that "[w]hen attorney's fees are awarded, the current market rate must be used.  The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed."[14] Accordingly, the current market rates for attorneys of similar skill, experience, and reputation to Mr. Walczak and Ms. Rose should be applied to all of their billing entries in this case.

Finally, Defendants assert that Mr. Walczak's rate is unreasonable because it is significantly higher than the rate that defendants' counsel charged their clients in this case.  But as defendants correctly point out, the Third Circuit has declined to acknowledge such rates in the lodestar calculation because they focus only on the market for defense attorneys.[15]

---

[12]  *Student Public Interest. Research Group of N.J. v. AT&T Bell Lab.*, 842 F.2d 1436, 1441 (3d Cir. 1988) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).

[13]  *Windall*, 51 F.3d at 1185 (citing *Hensley*, 461 U.S. at 434).

[14]  *Lanni v. New Jersey*, 259 F.3d 146, 149-150 (3d Cir. 2001) (internal citations omitted); *accord Choike*, 2010 WL 4614610, at *3.

[15]  *See Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir.1996); *Lining*, 2008 WL 2996871, at *4-5 & n. 4 (refusing to take defense attorneys' rates into account when determining whether rate requested by plaintiff's attorney was reasonable and noting

## II.    The Hours Billed by Plaintiff's Attorneys Reflect a Reasonable Expenditure of Time.

"The court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party."[16]  Objections by the adverse party "cannot merely allege in general terms that the time spent was excessive"; rather, they must "generally identify the type of work being challenged" and "specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable."[17]  Once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request.  The Court must then "'go line by line through the billing records supporting the fee request.'"[18]

In this case, defendants have claimed that some of the time expended by Mr. Walczak and Ms. Rose was duplicative, unnecessary, or excessive.  For the reasons below, defendants' objections should be denied.

### A.    The Involvement of Two Attorneys in This Case Was Reasonable and Consistent with Practices Upheld by This Court.

---

that defense market rates, particularly as paid by insurance companies, are often lower because counsel award discounts to such clients in exchange for repeated and sometimes voluminous assignments).

[16] *Interfaith Community Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005); *Doe v. Ward*, 282 F. Supp. 2d 323, 325 (W.D. Pa. 2003) ("The court may not 'decrease a fee award based on factors not raised at all by the adverse party.'" (quoting *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990))).

[17] *Bell v. United Princeton Prop., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989); *see Ward*, 282 F. Supp. at  325 (once fee petitioner submits evidence supporting hours worked and rates claimed, "[t]he burden then shifts to the opposing party to 'challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee'" (quoting *Rode*, 892 F.2d at 1183)).

[18] *Enright v. Springfield School Dist.*, No. 04-CV-1653, 2008 WL 696845, *2 (E.D. Pa. Mar. 13, 2008) (quoting *Evans v. Port Auth.*, 273 F.3d 346, 362 (3d Cir. 2001)).

"A reduction in allowable hours for the claims of multiple attorneys is warranted only if the attorneys are unreasonably doing the same work.  Thus, an award for time spent by two or more attorneys is proper when it reflects the distinct contribution of each lawyer."[19]  Defendants contend that the presence of both Mr. Walczak and Ms. Rose at the following events in this case was unreasonable: A May 4, 2009, meeting in Harrisburg with state officials; depositions on November 17, 2009, and November 23, 2009; status conferences with the Court on March 1, 2010, and December 2, 2010; two meetings with the parents of Steven Conway (one of whom was the client and both of whom were key witnesses in the case following Mr. Conway's death); and the trial of this case.  Plaintiff agrees that only one attorney was necessary for the depositions on November 17 and 23 and will therefore subtract Mr. Walczak's time spent in those depositions — 11.3 hours, or $5650 at $500 per hour — from her fee petition.

But plaintiff believes that both attorneys' attendance at the other events were necessary and reasonable expenditures of the attorneys' time.  *See* Exhibits 1 (Walczak Decl.) and 2 (Rose Decl.) to Plaintiff's Petition for Attorney's Fees (Docket No. 131).  On May 4, 2009, Plaintiff's attorneys met with the director and deputy director of the state Office of Children, Youth, and Families; two psychologists from the J.J. Peters Institute, a non-profit mental health agency providing outpatient assessment and treatment services in the area of sexual abuse; opposing counsel; and the solicitor and administrator for Fayette County Children and Youth Services at the OCYF office in Harrisburg, Pennsylvania, in an attempt to resolve the concerns of the original plaintiff and his attorneys regarding FCCYS' use of the Protocol for Sex Offenders and Contact with Children, which was the policy at issue in this case.  The meeting was an attempt to develop a new policy that would accord

---

[19] *Gerszten*, 2009 WL 4639335, at *5 (citing *Rode*, 892 F.2d at 1187).

with state law while also addressing the policy's constitutional infirmities.  The presence of Mr. Walczak, in his capacity as legal director of the ACLU of Pennsylvania, was essential to the discussions that occurred during the meeting.  The presence of Ms. Rose, who at the time had more substantive knowledge of the facts of the plaintiff's case and the Protocol, was necessary to fill in specific information related to the case.  In addition, Ms. Rose was tasked with revising the Protocol at the request of defendants' attorney following the meeting, and the information she gleaned from the meeting was necessary to the completion of that task.  Both Mr. Walczak and Ms. Rose made independent contributions to the meeting, and the presence of both attorneys was essential to resolving the future application of the Protocol, which was one of the major issues in this case.

The attendance of plaintiff's attorneys at two of the status conferences in this case was also reasonable.  In *Brown v. City of Pittsburgh*, for example, this Court held that "it was reasonable for [the plaintiff] to have the assistance of two attorneys at status conferences and proceedings" and noted that "it is certainly not uncommon to have two attorneys representing one party in a case such as this."[20] *Brown* presented a First Amendment challenge to a Pittsburgh ordinance establishing two types of zones barring speech activity around hospitals, medical offices and clinics — a fifteen foot buffer zone and a hundred foot bubble zone.  Like the instant case, *Brown* involved a constitutional challenge to an ordinance or policy that "presented not only complex legal questions, it presented an issue of first impression."[21]  The attendance of two attorneys at a status conference with the court is not the type of work that courts consider duplicative.  It was important for both Mr. Walczak and

---

[20]  *Brown v. City of Pittsburgh*, No. 06-393, 2010 WL 2207935, *11 (W.D. Pa. May 27, 2010); *see Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1103 (N.D. Cal. 2008) (denying defendant's objections to fees for multiple attorneys attending telephone conferences).

[21]  *Brown*, 2010 WL 2207935, at *11.

Ms. Rose to attend status conferences with this Court out of respect for the Court's time.  They

wanted to ensure that they would be able to answer any questions the Court may have had about the

case.  As the Court is aware, both Mr. Walczak and Ms. Rose participated in the conferences, and

their independent contributions were helpful to the efficient and productive use of time during the

status conferences.

Defendants' objections to the time that plaintiff's counsel spent meeting with Debra and

Robert Conway are similarly without merit.  Counsel's April 13 and 15 meetings with the Conways

were necessary to prepare their testimony as witnesses in the trial of this case.  As this Court is

aware, Mr. Walczak conducted the direct examination of Mr. Conway, and Ms. Rose conducted the

direct examination of Mrs. Conway at trial.  Accordingly, it was both reasonable and necessary for

Ms. Rose and Mr. Walczak to meet with their witnesses prior to trial, especially since the Conways

were the most important witnesses in the case.  The fact that Ms. Rose and Mr. Walczak coordinated

their travel to Fayette County for the same times is testament not to any duplication of their work but

to their desire to prepare as efficiently as possible for trial and to save money on travel expenses.

By traveling together, Ms. Rose and Mr. Walczak were able to discuss trial strategy and to save

money on mileage and tolls.

Finally, defendants object to the time billed by Mr. Walczak and Ms. Rose for attendance at

jury selection and trial.[22]  Defendants do not explain why they believe that the attendance of both

attorneys at trial was duplicative.  In fact, attendance at trial by both Ms. Rose and Mr. Walczak was

reasonable and necessary as each attorney made distinct contributions to the trial of this case.

---

[22]  For some reason, defendants include in their list of billing entries they contend are duplicative three trial days for Mr. Walczak — April 26, 27, and 28, but only one trial day for Ms. Rose — April 26.

Although Mr. Walczak played the role of lead counsel, Ms. Rose conducted three of the seven direct examinations at trial, including the direct examination of Debra Conway, who was the named plaintiff.  Ms. Rose and Mr. Walczak equally participated in jury selection and both made arguments to the Court during the course of the trial.  Accordingly, their fees should not be reduced for time they spent in trial.

> **B.**     **Defendants Provide No Support for Their Claims that the Time Billed by Plaintiff's Attorneys Was Excessive.**
>
> 1.         *The 13.95 Hours Billed for Strategy Meetings and Conferences Between Ms. Rose and Mr. Walczak Was Reasonable.*

"The courts have held it is reasonable for several attorneys to participate in strategy meetings and discussions."[23]  Defendants object, however, to conferences and meetings between Mr. Walczak and Ms. Rose totaling 13.95 hours over the course of three years of litigation, which included such events as a TRO motion, discovery, cross-motions for summary judgment, the death of the plaintiff, and a four-day trial.  Defendants do not give any reason for their objections to these billing entries other than their allegation that they are "unnecessary and redundant."  Defs. Objections at 11.  But that vague allegation, without more, lacks "sufficient specificity to permit judicial review."[24]  In addition, plaintiff respectfully submits that 13.95 hours of strategy meetings and conferences between two attorneys over three years in a case like this one is not excessive.  "The Supreme Court has recognized that the civil rights litigation is lengthy, time consuming, and complicated. It is entirely reasonable that ... more than one opinion was sought regarding trial strategy and trial

---

[23]  *Gerszten*, 2009 WL 4639335, at *5.

[24]  *Stremple v. Peake*, No. 01-890, 2009 WL 174170, *5 (W.D. Pa. Jan. 22, 2009); *see Bell*, 884 F.2d at 720 (adverse party must specifically state grounds for contending that hours are unreasonable).

proceedings. To act otherwise would jeopardize successful litigation preparation and strategy required by Plaintiffs to protect their civil rights.[25]

    2.       *The 2.4 Hours Billed by Ms. Rose for Delegating Attorney Tasks to Law Clerks and Volunteer Attorneys Was Reasonable.*

Defendants also object to billing entries by Ms. Rose for what they deem status conferences between counsel and her paralegal. As an initial matter, neither Ms. Rose nor Mr. Walczak have a paralegal, *see* Exhibit 6 at ¶ 2 (Walczak Supp. Decl.), so it would be impossible for them to bill for conferences with one. Ms. Rose did, however, assign some work in this case to law-student interns. Defendants object to Ms. Rose billing .3 hours for time spent discussing an assignment with a law student involving the creation of a timeline of events for the case as well as .2 hours for discussing an assignment with a law student to draft a statement of facts. Ms. Rose's assignment of those tasks to law students resulted in fewer attorney's fees accrued in this case because she was able to obtain assistance in completing legal work, for which plaintiff has not attempted to bill the defendant. Plaintiff should not be denied fees for time that her attorney necessarily expended in an effort to limit those fees.

Similarly, Ms. Rose is entitled to fees for the 1.9 hours she spent discussing assignments with attorneys who volunteered to help her with research for the motions in limine in this case. As with the law clerks, plaintiff has not attempted to bill defendants for the time these volunteer attorneys spent working on this case. But just as a partner is entitled to fees for time spent delegating a litigation task to a lower-paid associate, Ms. Rose is entitled to fees for the time she spent delegating

---

[25] *Gerszten*, 2009 WL 4639335, at *5 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 722-23 (1987); *Hensley*, 461 U.S. at 436).

litigation tasks to unpaid attorneys because the time spent in those tasks was reasonable and resulted in fewer fees being charged to the defendants.

Defendants also include a number of billing entries by Ms. Rose for drafting and revising the pretrial statement in their objections to tasks that constitute status conferences between counsel and her paralegal.  *See* Defs. Objections at 11-12.  All of these entries constitute reasonable hours expended by Ms. Rose alone on work that is customarily performed by attorneys and is compensable at her full hourly rate.

> 3.       *The Time Spent by Ms. Rose and Mr. Walczak on Drafting.*
> *Revising, and Editing the Pleadings and Briefs in This Case Was*
> *Reasonable.*

Defendants contend that either Ms. Rose's time for drafting the pleadings and briefs filed in this case or Mr. Walczak's time in reviewing and editing those documents is excessive but provide no reason for their objections.  Such objections plainly lack "sufficient specificity to permit judicial review."[26]  Although defendants object to the amount of time billed by Ms. Rose for drafting and revising the pleadings and briefs submitted in this case, defendants do not object to the necessity of drafting any particular pleading or brief, nor do they point to the time spent drafting any particular brief or pleading as excessive.  Rather, defendants simply list all of Ms. Rose's billing entries that relate to the drafting or revising of pleadings and briefs and state their opinion that the amount of time spent drafting those documents and revising them is excessive.

The briefs submitted in this case involved complex and novel parents' rights, due process, and familial association claims.  This was not the sort of case where one could cut and paste from

---

[26]    *Stremple*, 2009 WL 174170 at *5; *see Bell*, 884 F.2d at 720 (adverse party must specifically state grounds for contending that hours are unreasonable).

past briefs.  Rather, plaintiff's counsel was required to research the claims, develop legal theories, and draft original briefs from scratch.  As Judge Cindrich states, "In civil rights cases, there are generally no ready answers, no 'jar justice' remedies, as Judge Hand would have put it, but only reasoned arguments fashioned from historical precedent and a belief in the rights of the individual citizen.  The civil rights lawyer has no uniform code or bright lines to guide him or her to an easy solution of the matter at issue.  Instead, the cases are very much sui generis and require consummate intellect, skill and persuasive argument.  In terms of complexity and skill, no other area of the law demands more of the lawyer than civil rights."  Ex. 1 at ¶ 11 (Cindrich Decl.).  The time that Ms. Rose spent drafting and revising the pleadings and briefs in this case was reasonable given the quality of the work that she produced, the novel and complex constitutional claims involved, and the excellent result that the plaintiff obtained at the summary-judgment stage.

Similarly, the time that Mr. Walczak spent reviewing and editing the pleadings and briefs before they were filed was reasonable.  Once again, defendants provide no specific rationale for their objections that the time spent by Mr. Walczak was excessive or point to any particular billing entries as excessive.  Rather, defendants simply list all of Mr. Walczak's billing entries that reflect the time he spent editing or reviewing the plaintiff's pleadings or briefs and allege that they are excessive.[27] Plaintiff respectfully submits that the time Mr. Walczak expended reviewing and editing the documents that were filed in this case was well-spent and contributed to the plaintiff's success. The briefs submitted in this case by plaintiff's attorneys were meticulously researched and carefully

---

[27] Although defendants suggest that Mr. Walczak improperly billed for the time he spent reviewing and editing the deposition outline for Renee Coll because the deposition took place on November 23, 2009, and he billed for it on November 24, 2009 (Defs. Objections at 16), defendants have the wrong date for the deposition.  Ms. Coll's deposition actually occurred on November 25, 2009.  *See* Exhibit 2 at ¶ 2  to Plaintiff's Petition for Attorney's Fees (Docket No. 131).

drafted as befitted the complex and novel nature of the claims, and plaintiff's success is a testament to the quality of counsel's work.  Defendants have provided no basis for concluding that the time was excessive.

4.  *Plaintiff Is Entitled to Attorney's Fees for the Work Identified by Defendants as "Non-attorney Work."*

Defendants contend that Ms. Rose and Mr Walczak billed 11.3 hours for work that could be accomplished by a non-attorney and should be billed at a paralegal rate.  Of those 11.3 hours, 1.3 hours were spent by Mr. Walczak (.5) and Ms. Rose (.8) preparing or updating their time sheets. That work could not have been done by anyone but Mr. Walczak and Ms. Rose because, as part of preparing their time sheets, they exercised billing judgment by removing entries that reflected redundant or excessive fees or time that otherwise would not properly be billed to clients. Accordingly, Ms. Rose and Mr. Walczak are entitled to their full hourly rates for that time.

Defendants also object to 1.2 hours[28] that Ms. Rose spent over the course of three years of litigation filing documents through the court's electronic filing system.  But given the Court's requirement that attorneys file pleadings using their user names and passwords and that the signature of the attorney who files the document must appear on the document, it is counsel's understanding that the Court expects attorneys to file pleadings through ECF, not paralegals.  Otherwise, paralegals would be eligible to obtain ECF user names and passwords for the purpose of filing documents through ECF.

---

[28] Defendants point to a 6/16/08 billing entry by Ms. Rose as an example of work that would be more properly performed by a paralegal, presumably because it includes time spent adding certificates of service, converting pleadings to pdf, filing through ECF, and attempting to fax the pleadings to the Fayette CYS solicitor.  However, that entry also includes time spent editing pleadings, which is work that is properly done by an attorney.  The non-editing portion of that time entry constitutes at most .5 hours.

Defendants next object to .3 hours spent by Ms. Rose talking to this Court's clerks about issues in the case. Plaintiff respectfully submits that it is more appropriate for an attorney to contact the Court's clerks about such issues than a paralegal.

Finally, defendants object to 2.5 hours spent by Ms. Rose in a telephone call about a transcript with a court reporter (.3), downloading documents from ECF and organizing hard copies for the Court (.5),[29] and saving photo exhibits on a CD to turn over to opposing counsel (1.7). While it is possible that these tasks could have been performed by a paralegal, it is unreasonable to expect attorneys to delegate every ministerial duty they perform because "'the time spent delegating the task could well exceed the time spent by the attorney'" performing the task herself, and each of these tasks did not take up much of Ms. Rose's time.[30] Moreover, as noted above, Ms. Rose and Mr. Walczak are the only attorneys in the ACLU of Pennsylvania's Pittsburgh office, and they do not have a paralegal or secretary. In "a small office, it is not always possible to delegate tasks to others."[31] Plaintiff's attorneys "should not be penalized for unavoidable inefficient delegation,"[32] especially given the infrequency of the instances of non-delegation and the fact that plaintiff has not sought any fees for tasks performed by non-attorneys, with the exception of attorney Ilene Fingeret's paralegal, Ms. Sikora.

---

[29] Defendants incorrectly state that this billing entry occurred on 4/4/10, rather than 5/4/10 as reflected in Ms. Rose's declaration, and that Ms. Rose billed 5 hours for it rather than the .5 that is reflected in her declaration.

[30] *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of New Jersey,* 297 F.3d 253, 266-267 (3d Cir. 2002) (quoting *Marisol A. v. Giuliani*, 111 F. Supp. 2d 381, 395 (S.D.N.Y. 2000)).

[31] *Poston v. Fox*, 577 F. Supp. 915, 920 (D.N.J. 1984).

[32] *Steward v. Sears, Roebuck & Co.*, No. 02-8921, 2008 WL 1899995, *3 -4 (E.D. Pa. Apr. 29, 2008) (declining to reduce hourly rate of attorney for 12.5 hours of administrative tasks).

If the Court determines that any of these tasks should have been performed by a paralegal, however, plaintiff respectfully requests that the Court award plaintiff a paralegal rate of $210 per hour for these tasks, the rate awarded by this Court in *Choike v. Slippery Rock University*.[23]

     5.     *The 3.1 Hours Billed by Mr. Walczak for Research Are Reasonable.*

Defendants' objection to 3.1 hours that Mr. Walczak spent on research in preparation for the May 4, 2009,  meeting with OCYF officials in Harrisburg fails to consider the circumstances in which the plaintiff's lawyers work.  The ACLU-PA is a public interest organization with limited resources.  *See* Ex. 6 at ¶ 2 (Walczak Supp. Decl.).  Mr. Walczak and Ms. Rose are the only two attorneys employed by the ACLU-PA in Pittsburgh.  *Id.*  Unlike law firms where there are multiple associates, there are times when only one of them is available to complete a specific task.   In addition, this Court has previously rejected the argument that a senior attorney's hourly rate should be reduced because he performed tasks typically delegated to a less expensive attorney, explaining that a plaintiff is  "entitled to have her lead counsel involved in every aspect of her case."[24]  Accordingly, Mr. Walczak is entitled to his full hourly rate for 3.1 hours he spent on research.

---

[23]  *See* 2010 WL 4614610, *3-4.

[24]  *Ferczak v. Woodruff Family Services, LLP*, No. 01-1898, 2007 WL 951439, *3 (W.D. Pa. Mar. 26, 2007).

**C.      The Court Should Award Plaintiff the Full Hourly Rate for the Time Her
           Attorneys Spent in Travel.**

"[D]istrict courts have awarded attorney's fees at both full and reduced rates for travel

time."[25]   The decision to compensate counsel for travel time at full hourly rates is within the

discretion of the district court.[26]   In this case, the Court should not reduce the hourly rates of Ms.

Rose and Mr. Walczak for the time they spent in travel because some of the travel time was used by

counsel to accomplish substantive work on the case (at least 4.5 hours),[27] the travel time was

necessary to the successful representation of the plaintiff, and counsel lost the opportunity to meet

with other clients or perform other legal work when engaged in travel.   Counsel have attached

---

[25] *Witkowski v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Local Union 154*, No. 06-874, 2010 WL 1433104, *12  (W.D. Pa. Apr. 7, 2010); *compare Steward*, 2008 WL 1899995, at * 6 (finding that attorney loses opportunity to meet with other clients or perform other legal work when engaged in travel necessary to case); *Arietta v. City of Allentown*, No. 04-00226, 2006 WL 2850571, at *5-6 (E.D. Pa. Sept. 29, 2006) (compensating travel time at full hourly rate and concluding that "[b]ecause an attorney who is traveling may not meet with other clients or perform other legal work, we find that it is appropriate that the attorney should be able to bill at his standard hourly rate"); *Rush v. Scott Specialty Gases, Inc.*, 934 F. Supp. 152, 156 (E.D. Pa. 1996) (allowing travel time at full rate because "the attorney loses opportunity time by traveling to trial and should be compensated for that time as much as time spent otherwise on the client") *with Witkowski*, 2010 WL 1433104 at *12 (reducing hourly rate for time spent in travel by 50%); *Posa v. City of East Orange*, No. 03-233, 2005 WL 2205786, at *5 (D.N.J. Sept. 8, 2005) (allowing travel time at 50% of hourly rate); *Haberern v. Kaupp Vascular Surgeons, Ltd.*, 855 F. Supp. 95, 100 (E.D. Pa. 1994) (reimbursement for attorney travel time allowed in ERISA case at 50% reduced hourly rate), vacated in part on other grounds, 24 F.3d 1491 (3d Cir.1994).

[26]  *See Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 369 (S.D.N.Y. 2001).

[27]  *Davis v. New York City Hous. Auth.*, Nos. 90-628, 92-4873, 2002 WL 31748586, *8 (S.D.N.Y. 2002) (declining to discount hourly rate for time attorney spent in travel where time was used to accomplish substantive work in the case).

detailed explanations of their travel time as Exhibits 6 and 7.[28]   Those time sheets reveal that Ms.

Rose had 36.8 hours of travel time and Mr. Walczak had 22 hours of travel time.

## III.    The Lodestar Should Not Be Reduced Because Plaintiff Achieved Complete Success.

There is a "strong presumption" that the lodestar figure represents a "reasonable" fee.[29]

Although courts may make upward or downward departures from the lodestar, the lodestar should

be based on the plaintiff's overall success and not the percentage of claims on which she prevailed:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully
> compensatory fee. ... [T]he fee award should not be reduced simply because the
> plaintiff failed to prevail on every contention raised in the lawsuit.  Litigants in good
> faith may raise alternative legal grounds for a desired outcome, and the court's
> rejection of or failure to reach certain grounds is not a sufficient reason for reducing
> a fee.  The result is what matters.[30]

Defendants contend, however, that the plaintiff did not achieve complete success in this case because

the plaintiff succeeded on summary judgment against three of the five defendants, and the jury

awarded damages against just one defendant — Fayette County Children and Youth Services.

---

[28]  Counsel for plaintiff have attempted to quantify all of the travel time recorded in their time sheets, not simply the travel time to which defendants have objected.  Unless the travel time was recorded contemporaneously, counsel have recorded .5 hours for the roundtrip travel time from their office in Oakland to downtown, which is the average amount of time it takes to travel from Oakland to downtown Pittsburgh, including time to park, and 3 hours for the roundtrip travel from their office in Oakland to the homes of clients and witnesses in Fayette County, which is the amount of time plaintiff's attorneys recorded contemporaneously for traveling to the Republic and Masontown areas of Fayette County, where the witnesses who were interviewed reside.  The Court may take judicial notice that driving time can be determined using websites such as Google Maps and MapQuest.  *See Witkowski*, 2010 WL 1433104, at *12 (taking judicial notice of approximate travel time according to MapQuest in order to apply reduced hourly rate to time spent in travel); *Baker v. Berman*, No. 09-1061, 2009 WL 3400941, *6 n. 5 (W.D. Pa. Oct. 21, 2009) (taking judicial notice that driving time can be determined according to MapQuest).

[29]   *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

[30]  *Hensley*, 461 U.S. at 435; *accord Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011).

Without citing a single case in support of their proposition that merely failing to prevail against all defendants constitutes partial success, defendants have asked the Court to reduce the lodestar by 40%.   But the Supreme Court has rejected the defendants' approach, explaining that "'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon' ... provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested."[31] What matters is the "results obtained."[32]   In situations where a plaintiff succeeded on only some of his claims for relief, the Court must ask first whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded" and second whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."[33]

In this case, plaintiff's attorneys should recover a fully compensable fee because defendants have failed to meet their burden of justifying a downward adjustment of the lodestar.[34] First, plaintiff did not fail to prevail on any claims unrelated to the claims on which she succeeded because the claims against all defendants involved a common core of facts and were based on related legal theories.   And second, plaintiff's lawsuit, which resulted in an enforceable order reinstating John

---

[31]  *Id.* at 435 n.11 (quoting district court decision in same case).

[32]  *Id.* at 434.

[33]  *Id.*

[34]  *Lilly v. County of Orange*, 910 F. Supp. 945, 952 (S.D.N.Y. 1996) ("The party advocating a departure from the lodestar calculation bears the burden of establishing that an adjustment is necessary to reach a reasonable fee.") (citing *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir.1989)).

Doe's full parental rights in his children (Docket No. 16); summary judgment in plaintiff's favor on all claims except for his substantive due process claims against Defendants Madison and Davis (Docket No. 61); and a jury verdict in plaintiff's favor of $105,000 (Docket No. 130), achieved a level of success that justified the hours expended by her attorneys.

### A.  Plaintiff's Claims against All Defendants Involved a Common Core of Facts and Were Based on Related Legal Theories.

The Supreme Court has recognized that "plaintiffs may receive fees under § 1988 even if they are not victorious on every claim."[35]   A plaintiff is entitled to fees "for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'"[36] Because in civil-rights cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis ... the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[37]   Accordingly, "a plaintiff may receive fees for all work relating to the accomplishment of that result, even if 'the plaintiff failed to prevail on every contention raised.'"[38]

In this case, all of the hours that plaintiff's attorneys expended were necessary to redress the violation of John Doe's civil rights.  Federal courts have held that lack of success with respect to particular defendants does not justify a reduction in the lodestar if the plaintiff achieves success

---

[35]  *Fox*, 131 S. Ct. at 2214.

[36]  *Id.*

[37]  *Hensley*, 461 U.S. at 434.

[38]  *Fox*, 131 S. Ct. at 2214.

against one or more defendants and the claims against all defendants arise from a common set of facts or are based on related legal theories.[39]  For instance, in *Lilly v. County of Orange*, the court rejected defendants' request to apply a 20% reduction in the lodestar on the theory that plaintiff's unsuccessful claim against the sheriff's department alleging a municipal policy of inadequate training and supervision was legally and factually distinct and therefore severable from her successful claim against one of the individual deputy sheriffs.[40]  Relying on the Supreme Court's holding in *Hensley* that "'[w]here the plaintiff has failed to prevail on a claim that is *distinct in all respects from his successful claims, the hours spent on the unsuccessful claims* should be excluded,'" the court reasoned that the plaintiff's unsuccessful claim against the county, which alleged that the sheriff's department was directly responsible for the deputy sheriffs' specific actions that were the subject of his claims against them, was not "distinct in all respects" from the plaintiff's successful claim.[41]

---

[39]  *See Gregory v. Weigler*, 873 F. Supp. 1189, 1194 (C.D. Ill. 1995) (refusing to reduce lodestar even though plaintiff did not succeed on his claims against city and four police officers because unsuccessful claims were all related to claims on which he did prevail); *Costello v. Daddario*, 710 F. Supp. 1035, 1040 (E.D. Pa. 1989) (refusing to reduce lodestar for plaintiffs who obtained favorable verdict on only one claim against one defendant because claims against defendants who were dismissed were tightly intertwined with section 1983 violation upon which both plaintiffs ultimately prevailed); *Spano v. Simendinger*, 613 F. Supp. 124, 125-126 (S.D.N.Y. 1985) (refusing to reduce lodestar although plaintiff recovered against only one defendant because he prevailed on his essential claim that his civil rights had been violated through use of excessive force in his arrest); *Lyons v. Cunningham*, 583 F. Supp. 1147, 1152 (S.D.N.Y. 1983) (rejecting defendants' argument that plaintiffs' fee request must be reduced because the jury found seven of nine defendants not liable on excessive force claim because claims against all defendants were based on common set of facts).

[40]  *Lilly*, 910 F. Supp. at 952

[41]  *Id.* (emphasis in original) (quoting *Hensley*, 461 U.S. at 440).

The same is true here.  Plaintiff's claims against all defendants involved a common set of facts and were based on the same or related legal theories.[42]  FCCYS was the employer of the individual defendants at the time of the events giving rise to the plaintiff's claims, and its liability stemmed from the actions of those employees because they were undertaken pursuant to agency policy.  The claims against FCCYS were thus inextricably linked to the claims against the individual defendants, and plaintiff's attorneys would have expended the same number of hours on this case regardless of whether any FCCYS employees were named as defendants.

### B.   Plaintiff Achieved Complete Success.

In determining whether an adjustment of the lodestar is warranted, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[43]  The sole basis for defendants' contention that plaintiff did not achieve total success is the jury's decision to award damages against just one defendant.[44]  But the fact that the jury only assessed damages against one defendant — in this case, the government agency responsible for the policy that resulted in the violation of John Doe's constitutional rights — has no bearing on whether plaintiff achieved an excellent result.  In fact, plaintiff was highly successful in this litigation.  As noted above, it resulted in John Doe's regaining contact with his children, a federal court ruling that the FCCYS policy that caused the separation of Doe from his

---

[42] *See, e.g.*, *id.*

[43] *Hensley*, 461 U.S. at 435.

[44] Although defendants point out that plaintiff "recovered [in damages] less than a quarter of the requested attorney's fees," they acknowledge that the ratio of damages to attorney's fees has no bearing on the reasonableness of a fee award.  Defs. Objections at 21.

children violates the First and Fourteenth Amendments, and a jury verdict of $105,000 in compensatory damages against FCCYS.

Indeed, while the plaintiff in this case achieved a substantial damages award for emotional pain and suffering, that is not the only consideration in determining the success of a civil-rights plaintiff:

> Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.  And, Congress has determined that "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff...."  Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards.[45]

In this case, the plaintiff succeeded in having a government policy that cut off all contact between parents and their children declared unconstitutional.  As a result of the litigation, John Doe was also reunited with his three young children, whom he had not seen or spoken to in ten months.  Those outcomes, combined with the damages award, constitute an excellent result and provide no basis for a downward departure of the lodestar.

---

[45] *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *see Fox*, 131 S. Ct. at 2213 ("When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves 'as a private attorney general, vindicating a policy that Congress considered of the highest priority.'") (qoting *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402 (1968) (*per curiam*)).

Nor are there any other factors that warrant a downward adjustment of the lodestar.[46]  This case involved a substantial commitment of time and labor by plaintiff's attorneys given the motion for temporary restraining order and motions for summary judgment that were filed, the logistical and strategic difficulty of going to trial six months after the death of the original plaintiff, and the jury trial that was held.  This case also involved novel and difficult questions of constitutional law, including issues of substantive and procedural due process and familial association.  And the case was "undesirable," given the allegations by FCCYS at the time the lawsuit was filed that John Doe was a perpetrator of child sexual abuse who posed an imminent risk of sexual abuse to his three children.  Finally, this case created a significant public benefit because it resulted in a federal court order declaring unconstitutional a government policy that separated parents from their children.[47]  For all of these reasons, plaintiff is entitled to a fully compensatory fee for the work that her attorneys performed representing her and the original plaintiff, John Doe.

---

[46]  *See id.* at 568, n. 3 (listing factors as "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases").

[47]  *See City of Riverside*, 477 U.S. at 574-76 (discussing public benefit that inures from lawsuits that affect institutional behavior); *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1308 (11th Cir. 2001) (in determining whether plaintiff's attorney achieved excellent result, "court needs to account for the vital role private litigation plays in the enforcement of civil rights, the difficulties involved in sustaining those lawsuits, the heightened importance of such lawsuits when the defendant is a public body, and the public benefit that occurs when those lawsuits ultimately vindicate a constitutional right").

**Conclusion**

In light of the defendants' arguments, plaintiff has adjusted the lodestar in the following ways: Mr. Walczak's fee is reduced by $5650 due to the 11.3 hours he billed for attending two of the depositions in the case with Ms. Rose, and $8937.50 is added to Ms. Rose's time and $1250 is added to Mr. Walczak's time, reflecting their bill for preparing this response, *see* Ex. 6 (Walczak Supp. Decl. at ¶ 4) and Ex. 7 (Rose Supp. Dec. at ¶ 3).

WHEREFORE, plaintiff respectfully requests that this Court grant the petition and award $442,418.00 in fees and $5,930.10 in costs, for a total of $448,348.10.

Respectfully submitted,

/s/ Witold J. Walczak
Witold J. Walczak
PA Id. No. 62976

/s/ Sara J. Rose
Sara J. Rose
PA Id. No. 204936

AMERICAN CIVIL LIBERTIES FOUNDATION
  OF PENNSYLVANIA
313 Atwood Street
Pittsburgh, PA 15213
(412) 681-7864

*Attorneys for Plaintiff*

Date: July 7, 2011